**ALLRIGHT PARKING SYSTEM, INC., Appellant,**

v.

**William S. DENIGER, Jr., Appellee.**

**No. 4682.**

Court of Civil Appeals of Texas, Eastland.

March 22, 1974.

Rehearing Denied April 12, 1974.

David C. Waldrep, Richard S. Geiger, Inc., Dallas, for appellant.

John M. Gillis, Dallas, for appellee.

WALTER, Justice.

William S. Deniger, Jr., recovered a judgment against Allright Parking System, Inc., for damages to his automobile after it had been stolen from Allright's parking lot. Allright has appealed and contends there is no evidence to support the jury's answers to issues four, seven and ten.

The jury found that the car had been stolen from the parking lot; that Allright failed to exercise reasonable and ordinary care to protect the car against theft; that it failed to attend the premises with an adequate and prudent number of employees; that it failed to keep the ignition keys to the automobile in a safe place; and that these acts constituted negligence and a proximate cause of the damages to the car.

In Trammell v. Whitlock, 150 Tex. 500, 242 S.W.2d 157 (Tex.Sup.1951) at page 159 the court said:

"The defendant-petitioner is correct in his contention that the burden of proof on the whole case, including the issue of negligence, is on the respondent bailor, but as stated in Wigmore on Evidence, 3rd Ed., § 2508, 'Where goods have been committed to a bailee, and have either been lost or been returned in a damaged condition, and the bailee's liability depends upon his negligence, the fact of negligence may be presumed, placing on the bailee at least the duty of producing evidence of some other cause of loss or injury.' Without prejudice to the burden of proof being at all times on the bailor, the bailor under this latter rule makes a prima facie or presumptive case of negligence by proving the bailment and either the return of the goods by the bailee in a damaged condition, not existing at the time of their delivery to him, or a failure by him to return them at all. The rule is said to be based on the just and common sense view that the party in possession or control of an article is more likely to know and more prop-

erly charged with explaining the damage to it or disappearance of it than the bailor who entrusted it to his care. It is evidently supported by the weight of authority in the United States, including our own state."

William S. Deniger, Jr., testified substantially as follows:

I began parking my car at Allright's lot in August prior to November 11, 1971, when my car was stolen. They have only one attendant at this lot and his name is Gabriel and he's about 50 years of age. I left my car at the parking lot at about 8:30 in the morning, which was about the time I always arrived at the parking lot. I would drive my automobile into the parking lot, get out of my car and leave. I would leave my car at the parking lot all day. When I would come back to get my car, it would not necessarily be in the same spot where I left it in the morning. The attendant moves them around. He had to park "an awful lot of cars in a very short period of time, and he was usually —he was always extremely busy when I would drive in, and—" When I would come for my car in the evening, the attendant did not bring my car to me but I would drive my car from wherever he had parked it. My car would never be in the same spot 2 days in a row and sometimes he had to move cars for me to get out. I would leave my keys in the car when I parked it in the morning. One time I accidentally took my keys out of my car and the attendant told me that if I did that again, he would roll my car out in the street and leave it there. After he told me this, I always made an effort to leave the keys in the car as he had instructed me to do.

On November 11 when I came back to get my car, I couldn't find it. I looked for it and it wasn't there. Gabriel looked for it and he couldn't find it. The next time I saw my car it was at Lee Jarom Ford.

David L. Carothers, President of Allright Parking System, testified substantially as follows:

We operate 44 parking lots in Dallas including the lot at Camp and Field. We operated this lot in November of 1971. Willis Gabriel was the only employee on the lot.

The footage of our lot on one side is approximately 125 feet and the depth from one street to another is about 190 feet.

We have an office on the lot which is roughly a building 4 by 4 where Gabriel maintained his office. We accommodate all day parkers, in and out parkers and interim-type parkers, and we have a lot of traffic. Approximately 80 per cent of the people stay with us all day on this particular lot. We can accommodate roughly 125 cars at this place. During the day, we will probably park from 150 to 160 cars. Approximately 80 percent of our parkers arrive between 7:30 and 9:30 in the morning. The bulk of Gabriel's work was performed during the 2 hours in the morning and 2 hours in the afternoon. Gabriel could be as far as 190 feet away from a car while working on the lot.

When asked "but in any event this man had more than you could say grace over in the morning and afternoons," Mr. Carothers testified, "he had to keep up with it."

We find some evidence of probative force which supports the jury's answer to Special Issue No. 7, that Allright failed to attend the premises where Deniger's automobile was kept with the adequate and prudent number of employees; and Special Issue No. 4, that Allright failed to exercise reasonable and ordinary care to protect Deniger's car against theft and resulting damage. Allright Texas, Inc. v. Simmons, 501 S.W.2d 145 (Tex.Civ.App. Houston (1st Dist.) 1973, writ ref. n. r. e.). We have examined all of appellant's points and find no merit in them.

The judgment is affirmed.